STATE, RESPONDENT, *v.* MITTON, APPELLANT.

(No. 2,553.)

(Submitted June 30, 1908. Decided July 18, 1908.)

[96 Pac. 926.]

*Criminal Law—Forgery — Information — Demurrer — Uttering Forged Instrument—Element of Offense—Evidence—Admissibility—Instructions.*

Forgery—Information—Separate Counts—Same Offense—Demurrer.
1. An information charging forgery in two counts, the first by the false making of the instrument, and the second by uttering it (the pleading distinctly referring to the same instrument), is not vulnerable to attack by demurrer for charging two offenses, the inhibition of section 1836, Penal Code, that the indictment or information must charge but one offense, being directed to pleadings which charge more than one distinct offense, and not to one which in each of two counts charges the same offense.

Same—Uttering Forged Note—Alteration—Evidence—Admissibility,
2. In a prosecution for uttering a forged note, evidence *held* admissible to show that the instrument had been originally a part of an order for school supplies and had been severed from the remaining portion, without the knowledge or consent of the signers of the order, by which severance the paper was changed from a non-negotiable into a negotiable promissory note.

Same—Uttering Forged Note—Element of Offense—Evidence.
3. To justify conviction of one charged with uttering a note while knowing it to be forged, it is not necessary to show that the forgery in the first instance was committed by the defendant. If, knowing that the instrument was in fact a forgery, he passed it as true and genuine with a felonious intent, he is guilty of forgery under section 840, Penal Code.

Same—Evidence—Admissibility—Harmless Error.
4. An information charging forgery contained two counts, the first by the false making of the instrument, and the second by uttering it while knowing it to be forged. Before final submission of the case the court withdrew from the jury all consideration of the first count, but before doing so, evidence had been admitted showing that the instrument in question had been a part of an order for supplies and had been severed from the remaining portion, whereby the paper was changed from a non-negotiable to a negotiable promissory note—which evidence was admissible under the second count. *Held*, that if the admission of such evidence before withdrawal of the first count was error, it was error without prejudice, the jury having been told not to consider the first count in arriving at a verdict.

Same—Filling Blanks—Implied Authority.
5. The rule that the delivery of a writing containing blanks evidently intended to be filled, creates an implied authority on the person who receives it to complete the instrument by filling the blanks, has no application where the defendant had himself testified that the blanks in the note which he was charged with uttering while knowing it to be spurious, had all been filled before it was signed.

Same—Uttering Forged Note—Circumstances of Transfer—Evidence—Admissibility.
6. Evidence relating to the circumstances of the transfer of a forged note, with the uttering of which defendant stood charged, was admissible as a part of the history of the transaction, and as showing the intent with which he acted.

Same—Similar Transactions—Evidence—Admissibility.
7. Evidence revealing transactions of a nature similar to the one which gave rise to the prosecution against defendant for uttering a forged note, was admissible for the purpose of showing a system or general plan, a guilty knowledge or criminal intent, and to negative the idea that the act for which the defendant was on trial was the result of accident or mistake.

Same—Changing Non-negotiable into Negotiable Note.
8. *Held*, that the changing of an order for school supplies by detaching a portion thereof so as to create, out of what was not intended as a promissory note, a negotiable instrument, is such a material alteration of the original instrument as to constitute forgery, if done with a criminal intent.

Same—Instructions—Refusal.
9. Where the district court in a prosecution for forgery had withdrawn from the jury's consideration a count charging the crime by the false making of the instrument, and defendant was convicted on a second count, for having uttered it with the knowledge that it was

forged, it properly refused to instruct the jury that one of the issues was whether defendant signed the names of the purported makers of the note, since it was immaterial who forged it or by what means the forgery was accomplished.

Same—Conviction—Evidence—Sufficiency.

10.  A judgment of conviction of the crime of forgery will not be reversed for alleged insufficiency of the evidence to justify the verdict, even though another jury might properly have reached another conclusion.  If the evidence of defendant's guilt was not so weak as that it ought not to have gone to the jury, and was believed by them, the defendant was properly convicted.

(Chief Justice BRANTLY, dissenting.)

*Appeal from District Court, Gallatin County; E. K. Cheadle, Judge.*

J. A. MITTON was convicted of the crime of forgery, and he appeals from the judgment and an order denying him a new trial.

*Mr. J. L. Staats,* for Appellant.

The amended information sets forth two offenses.  The demurrer to the amended information should have been sustained. (*People* v. *Tower,* 135 N. Y. 457, 32 N. E. 145; *Territory* v. *Poulier,* 8 Mont. 146, 19 Pac. 594; *People* v. *Parker,* 67 Mich. 222, 11 Am. St. Rep. 578, 34 N. W. 720; *State* v. *Wood,* 13 Minn. 121; 9 Am. & Eng. Ency. of Pl. & Pr. 603, and cases cited; *State* v. *Stevens,* 56 Kan. 720, 44 Pac. 992; *State* v. *Goodwin,* 33 Kan. 538, 6 Pac. 899.)

The instrument was payable to the Superior School Supply Company, or order.  In order to negotiate the instrument, or utter and pass the same, knowing it to have been forged, the evidence should be directly in line with the false making of the instrument alone, and any evidence of the material alteration of it would be foreign to the issues in the case; and under the allegations of the second count of the amended information, evidence of alteration should not have been admitted. (*People* v. *Cole,* 130 Cal. 13, 62 Pac. 274; *People* v. *Bendit,* 111 Cal. 277, 52 Am. St. Rep. 186, 43 Pac. 901, 31 L. R. A. 831; *People* v. *Palmer,* 53 Cal. 615; *People* v. *McKenna,* 81 Cal. 158, 22 Pac. 488; *People* v. *Mahoney,* 145 Cal. 104, 78 Pac. 354;

*State* v. *McNapsy,* 58 Kan. 691, 50 Pac. 895, 38 L. R. A. 756.) The defective allegation in the amended information as to the uttering and passing of the instrument cannot be read with the allegations of the amended information charging the making and forging of the instrument, in order to supply a defect therein. This cannot be done even where there are separate counts. (*People* v. *Smith,* 103 Cal. 563, 37 Pac. 516; *People* v. *Mitchell,* 92 Cal. 590, 28 Pac. 597.)

A delivery of a writing containing blanks evidently intended to be filled, creates an implied authority on the receiver to complete the instrument, especially in negotiable paper, in conformity to the character of the writing. (2 Am. & Eng. Ency. of Law, 253, 254, and cases cited; *Gillaspie* v. *Kelly,* 41 Ind. 158, 13 Am. Rep. 318; *Rainbolt* v. *Eddy,* 34 Iowa, 440, 11 Am. Rep. 152; *Smith* v. *Crooker,* 5 Mass. 538; *Ritterskamp* v. *Stifel,* 59 Mo. App. 511; Greenleaf's Evidence, No. 568A; *South Berwick* v. *Huntress,* 53 Me. 89, 87 Am. Dec. 535; *Angle* v. *North Western Ins. Co.,* 92 U. S. 330, 23 L. Ed. 556.) The right is implied from all the circumstances. (*Swartz* v. *Ballou,* 47 Iowa, 188, 29 Am. Rep. 470; *State* v. *Young,* 23 Minn. 551.) This implied authority includes the filling in the amount. (*Eichelberger* v. *Old Nat. Bank,* 103 Ind. 401, 3 N. E. 127; *Boyd* v. *Brotherson,* 10 Wend. (N. Y.), 93; *Blackwell* v. *Ketcham,* 53 Ind. 184.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

J. A. Mitton was convicted of the crime of forgery, and appeals from the judgment and an order denying him a new trial.

This case was heretofore before this court, and a sufficient statement will be found in the former opinion. The facts need not be repeated here. (*State* v. *Mitten,* 36 Mont. 376, 92 Pac. 969.) Upon filing the *remittitur* in the district court the county

attorney asked for and was granted permission to file an amended information. This amended information contains two counts, in the first of which it is charged that the defendant feloniously and falsely made, forged and counterfeited the note set forth in the former opinion. In the second count it is charged that the defendant did feloniously utter and pass as true and genuine a certain promissory note and counterfeit writing (the note in question), he, the defendant, then and there well knowing the same to be false, forged and counterfeit, with intent to injure certain persons. To this amended information the defendant interposed a demurrer, which was overruled, and this ruling of the court is assigned as error prejudicial to the defendant.

1. It is urged that since each count states an offense, the amended information charges two offenses, and is vulnerable to the attack made by the demurrer, and the first clause of section 1836, Penal Code, is invoked in support of this contention. That clause is as follows: "The indictment or information must charge but one offense." We agree with counsel that each of these two counts states an offense, and it is necessary in any criminal pleading that each count shall be complete in itself. The inhibition of the statute is directed to pleadings which charge more than one distinct offense, not to a pleading which, in each of two counts, charges the same offense. The remaining portion of section 1836 is as follows: "But the same offense may be set forth in different forms under different counts, and when the offense may be committed by the use of different means, the means may be alleged in the alternative in the same counts." In the information now before us the separate counts distinctly refer to the same instrument, and leave no room for doubt that they charge the same offense, to-wit, forgery, the first by the false making of the instrument, and the second by uttering the same instrument.

The question presented here is not an open one. In *Territory* v. *Poulier*, 8 Mont. 146, 19 Pac. 594, this court said: "The statute of this territory, defining forgery and the acts that constitute it, declares that such crime may be committed by falsely

uttering and publishing, as well as by falsely making and forging. These are separate means by which the crime can be committed; and, when each of the acts is connected with the same instrument, an indictment, charging the same in separate counts, the first by falsely making and forging, the second by falsely uttering and publishing, is not subject to demurrer for duplicity; for only one offense is charged, to-wit, the crime of forging as to one and the same instrument. Where the statute declares an act unlawful when perpetrated in any one or all of several modes, an indictment may charge the act in separate counts, basing each count upon the different modes specified; and it is held that the indictment may contain, in one count, an enumeration of all the different modes or means by which the crime may be committed.''

2. Over objection of defendant the court permitted the introduction of evidence tending to show that the note in question had been originally a part of an order for school supplies, and had been severed from the other portion without the knowledge or consent of the men who signed the order; also that certain blanks in the note had been filled by the defendant after it had been signed. The court also gave certain instructions, in one of which it is said, in substance, that forgery may be committed by filling in blanks after the instrument had been signed, if done without authority, and with the criminal intent. In the other it is said, in substance, that forgery may be committed by severing a note from the remaining portion of the order, if done under certain circumstances. The admission of this evidence and the giving of these instructions present one of the principal contentions made by counsel for appellant.

Appeal is made to the former decision of this court as the law of this case upon the second trial; but in the information which was before us upon the former appeal, the defendant was charged, in one count only, with forgery in falsely making, forging, and counterfeiting the note, and all that this court decided upon the question now under consideration was that under those allegations the state could not prove the forgery

by an alteration. The gist of the opinion is found in this sentence: "A person cannot be charged with forgery in fraudulently making an instrument, and proved guilty by showing that he altered the instrument."

Before the case was submitted on this second trial, the court withdrew from the jury all consideration of the first count in the amended information, and the trial proceeded upon the second count alone, and upon that count the defendant was tried and convicted. The situation was the same as though there had never been any other count, and the allegations which the defendant was required to meet were those charging that he feloniously uttered this forged note, knowing it to be forged. In the second count the particular means by which the note was forged in the first instance are not set forth. It was not necessary to a conviction that it be shown that the forgery in the first instance was committed by the defendant. It might have been done by some one else, and yet, if, knowing that the instrument was in fact a forgery, the defendant passed it as true and genuine, with a felonious intent, he would be guilty of forgery under our statute. (Penal Code, sec. 840.) When this case went to the jury upon the second count alone, the defendant was charged with knowledge that the state would seek to prove that the note had been forged in the first instance by any of the means by which forgery may be committed. This imposes no hardship upon the defendant, for the gravamen of his alleged offense consisted only in passing the note as true and genuine, knowing it to be a forgery. We are satisfied with our former decision, but it does not have any application here. The rule we announced can only be applied in a case in which the state singles out and specifies the particular means by which the forgery in the first instance was committed, as was done in the first trial of this case, but was not done in the second count of the amended information, which was the one before the jury upon this second trial. We repeat, therefore, that the testimony tending to show that the forgery in the first instance was committed by any means by

which forgery can be committed was properly admitted under the allegations of this second count. If it be urged that this evidence was admitted before the first count had been withdrawn, it is sufficient answer to say that such error was error without prejudice, since the jury were told not to consider the first count at all.

We agree with counsel for appellant, further, that the "delivery of a writing containing blanks evidently intended to be filled creates an implied authority on the receiver to complete the instrument, especially in negotiable paper." (Laws 1903, p. 240, sec. 14.) But the question of this defendant's implied authority to fill the blanks in this promissory note, after it had been signed by French, Orr and Johnson, cannot possibly arise here. The defendant's own testimony distinctly negatives any such idea. According to his testimony the note was fully filled up before it was signed, so that there is not any room left for his counsel to say that he had implied authority to do that which he states positively he never did.

3. The witness Armstrong, to whom the note was transferred by Mitton, was asked to detail the circumstances of the transfer. This evidence was competent and material. It was not only a part of the history of the transaction, but tended to show the intent with which the defendant acted; and the same thing may be said of the evidence given by the witness Reynolds.

4. As bearing further upon the question of the defendant's intent, the state offered evidence tending to show a similar transaction conducted by the defendant about the same time. This evidence was properly admitted. In *State* v. *Newman,* 34 Mont. 434, 87 Pac. 462, this court recently had occasion to review this question at length. A reference to that case will be sufficient here.

5. It is earnestly contended that error was committed in admitting in evidence the remaining portion of the order for school supplies, from which it is claimed the note in question was detached by the defendant after it had been signed; in

giving certain instructions in reference thereto; and in refusing to give defendant's requested instructions 12 and 13. It is urged that detaching the note from the remaining portion of the order was not such a material alteration of the instrument as would constitute forgery.

Sections 3991, 3992 and 3996 (as amended by Session Laws 1899, p. 124) and section 3997 of the Civil Code provide:

"Sec. 3991. A negotiable instrument is a written promise or request for the payment of a certain sum of money to order or bearer, in conformity to the provisions of this article.

"Sec. 3992. A negotiable instrument must be made payable in money only, and without any condition not certain of fulfillment."

"Sec. 3996 (as amended). A negotiable instrument may contain a pledge of collateral security, with the authority to dispose thereof, also a provision for reasonable attorney fee or both.

"Sec. 3997. A negotiable instrument must not contain any other contract than such as is specified in this article."

These provisions were considered at length in *Cornish* v. *Woolverton*, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4, and the opinion on this branch of the subject is epitomized in this sentence: "The provisions of the statute are clearly prohibitory, and apply to all sorts of conditions not certain of fulfillment, whether they attach before or after maturity, and to all sorts of contracts other than the principal promise and those stipulations which fall within the exceptions provided for in the statute."

There is not any controversy in the evidence over this fact: That the defendant sought an order for school supplies, and that these trustees, French, Orr and Johnson, gave an order in writing, signed by the three of them. If we accept the defendant's version from this point on, the order so given by French, Orr and Johnson was as follows:

SUPERIOR SCHOOL SUPPLY CO.        One case of four maps, U. S. N. A. S. A. Asia
    Please Ship To Mrs. J. A. Orr        One Teachers Desk 06
Clerk of Dist. No. 23 County of Gallatin        One Teachers Chair No. 64
As soon as possible by N. P. R. R.        One 10 ft. Rec. seat
In the County of Gallatin        One Webster Inter. Dict. Marble edge
P. O. Address Bozeman        One champion Holder

----------------------------------------------------------------------

        subject to approval

| State Mont. | Bozeman Aug. 20 1906 | |
|---|---|---|
| Amt. of order——— | On or before———October 1st, 1906, We jointly and severally promise to pay to the | $61.00 |
| Terms Oct. 1 06 | SUPERIOR SCHOOL SUPPLY CO., or order, | |
| Salesman J. A. M. | ———Sixty-one———————Dollars for value received, with interest at 6 per cent per annum | When due |
| P. O.   Boz | from date until paid and with attorney's fees in addition to other costs, in case the holder is obliged | |
| Date 8/20 | to enforce payment at law. | Oct. 06 |
| ———————1906 | Payable at | |
|  | (Signed)   J. H. French | Number |
| Checks must be | (Signed)   J. A. Orr | |
| made Payable | (Signed)   M. R. Johnson | |
| at par. | P. O. Address Bozeman | |

After receiving this instrument the defendant cut out of the order the note, and transferred it to Armstrong. It is claimed by the appellant that the cutting of this note away from the remaining portion of the order was not a material alteration of the instrument, and subdivision 2, section 3, of Chapter 121, p. 238, Laws of 1903, is invoked in aid of this contention. That subdivision, with the introductory clause, is as follows: "An unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with * * * (2) A statement of the transaction which gives rise to the instrument." But we are not able to agree with counsel in his conclusion. The subdivision above clearly refers to such memorandum, placed on the note, as will indicate the particular property for which payment is to be made, or something of a like nature, but is not intended to authorize the changing of the very nature of the instrument itself. The paper signed by French, Orr and Johnson was an order or contract for goods, and a promise to pay for them. If the note be detached, there is not any longer an order for goods at all. The signatures are to the order, as well as the promise to pay. Taken as a whole,

as it must be, the instrument is not a promissory note at all; but detached, there is created at once, not only a promissory note, but a negotiable one at that. Upon principle we hold that the changing of a writing from a non-negotiable instrument into a negotiable promissory note is such a material alteration of the original instrument that, if done with the criminal intent, it will constitute forgery. We think this is the doctrine held generally. A leading case upon the subject is *State* v. *Stratton*, 27 Iowa, 420, 1 Am. Rep. 282. While there is some language employed by the court in *Palmer* v. *Largent*, 5 Neb. 223, 25 Am. Rep. 479, relied upon by appellant, which would seem to indicate a contrary view, we think, on the whole, that case is not an exception to the general rule which we have announced.

6. Error is predicated upon the refusal of the trial court to give defendant's requested instruction No. 2. This offered instruction undertakes to state the issues in the case. The first portion of that instruction is as follows: ''Under the allegations of the information in this case the sole issues are whether or not the defendant signed the names of the purported makers to the promissory note, introduced in evidence in this case, with the intent to defraud them, and that the defendant uttered, published, and passed said instrument knowing the same to have been forged by signing the names of the purported makers to said note, with the intent to defraud them.'' The court was clearly correct in refusing this offered instruction; for, having withdrawn from the consideration of the jury the first count of the amended information, it was wholly immaterial who forged the instrument in the first instance, or by what means that forgery was accomplished. As we have said before, the state could properly offer evidence tending to show that it had been forged by any of the means recognized by law, and was not confined to showing that the defendant himself had signed the names of French, Orr, and Johnson to the instrument.

7. Finally it is said that the evidence is insufficient to justify the verdict; and, while we recognize the fact that the evidence does not present a very strong case against the defendant, and

that different jurors might properly have reached a different conclusion, we are not prepared to say that the evidence of the defendant's guilt is so weak that it ought not to have gone to the jury. Much of the evidence offered by the state is directed to showing a forgery of the instrument in the first instance by the defendant himself, and, while it is not very convincing, we think it is sufficient to go to the jury, and if believed by them, then there cannot be any question that the defendant was properly convicted, for the evidence tending to show that he uttered the note with intent to injure the makers of it is ample to sustain the verdict.

We have examined every assignment made by counsel for defendant, but fail to discover any reversible error. The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH concurs.

MR. CHIEF JUSTICE BRANTLY: I dissent. In the statement contained in the foregoing opinion as to what was decided on the former appeal in this case, I think my associates are in error. As appears from the statement of the case preceding the opinion, the charge upon which the defendant was tried was that he "did then and there falsely, unlawfully, and feloniously make, forge, and counterfeit" the promissory note in question. It was held that those paragraphs of the instructions (11, 12, 13 and 14) which dealt with forgery by material alteration were not proper, because the charge in the information could not be sustained by proof of such alteration. A new trial was granted because of the error committed in submitting them to the jury. If this is not the principle upon which the case was determined, then I am not able to understand the English language. Entertaining this view, I think the rule therein declared became the law of this case, and whether right or wrong, requires that the defendant be given a new trial; for if the charge in that information could not be sustained by proof of a material alteration, neither can a charge of forgery, by uttering a "false, forged,

and counterfeit'' instrument, be sustained by proof of uttering an instrument forged by a material alteration.

After further consideration of the subject, I am of the opinion that proof of a material alteration sustains a charge when stated in the terms ''falsely made, forged and counterfeited.'' A satisfactory discussion of the subject may be found in *Commonwealth* v. *Boutwell*, 129 Mass. 124, where are cited many English and American cases sustaining this view. Of course, if the pleader chooses to narrow the charge down to a forgery by alteration, it necessarily and logically follows that he must set forth the alteration so that the court may determine whether it is material. I do not understand that the cases of *Bittings* v. *State*, 56 Ind. 101, and *State* v. *Bryant*, 17 N. H. 323, cited in the former opinion, go any further than to declare this to be the rule.